**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 31 2012, 8:52 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ROBERT S. RIFKIN**
Maurer Rifkin & Hill, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CYNTHIA R. ATKINSON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1202-PL-81 |
| | ) | |
| INDIANA DEPARTMENT OF | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Heather Welch, Judge
Cause No. 49D12-1102-PL-4605

**July 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Cynthia R. Atkinson appeals the trial court's denial of her motion to correct error. Atkinson raises two issues, which we revise and restate as whether the court erred in denying her motion. We affirm.

The relevant facts follow. Atkinson was employed by the Indiana Department of Administration (the "IDOA") beginning in February 2002 as a procurement administrator. Atkinson was employed in the Buying Section which later became the General Sourcing division. On August 18, 2009, the IDOA terminated Atkinson's employment, and the Indiana State Personnel Department ("ISPD") prepared a Personnel/Payroll Action Form ("PPAF") to document the termination, which stated "Termination due to unauthorized leave."[1] Appellant's Appendix at 52. The positions in the General Sourcing division were eliminated on November 13, 2009.[2] The IDOA gave the employees within the General Sourcing division a skills assessment test as an opportunity to apply for positions within the IDOA.

Atkinson challenged the termination of her employment, and an evidentiary hearing was held on February 10, 2010 before an Administrative Law Judge (the "ALJ") of the State Employees' Appeals Commission (the "SEAC"). On June 16, 2010, the ALJ issued Findings of Fact, Conclusions of Law and Non-Final Order, which included findings that Atkinson sought emergency medical care on August 9, 2009 and was ordered off work for twenty-four hours. She did not work on August 10, 2009 and was

---

[1] The PPAFs in the record indicated that Atkinson's position title was Purchasing Administrator 2.

[2] The parties' stipulation of facts stated that the General Sourcing division was eliminated on November 13, 2009, and the PPAF which was subsequently filed with the ISPD stated that the layoff was effective November 14, 2009.

2

approved to use 7.5 hours sick leave; worked on August 11, 2009 for one hour and was approved to use vacation leave for the rest of the day or the following day and to use "flex time" to work additional hours the following week to make up for the time she was likely to be off without leave; visited her family doctor's office and later an eye clinic and was instructed that she would be "able to return to work" after a follow up visit on August 13, 2009. She was off work on August 12, 2009; went to the follow up appointment on August 13, 2009 and thereafter "went to work at least a half-day"; worked the entire day on August 14, 2009; on August 17, 2009, went to a follow up examination, thereafter returned to work, and was fired at 2:00 p.m. Id. at 17. The ALJ found that Atkinson proved that she was authorized to use her last vacation day and to work additional hours the week following her absences to avoid unauthorized leave. The ALJ ordered the IDOA to "rescind the termination of [Atkinson's] employment and adjust her pay and records accordingly." Id. at 19. The ALJ also ordered that Atkinson's back pay be offset by unemployment benefits or any other income she may have derived during the period of her termination. According to a Notice of Final Order on August 17, 2010, the SEAC entered the findings and conclusions of the ALJ as its final determination.[3]

On October 14, 2010, the IDOA issued a check to Atkinson for special pay in the gross amount of $5,888.44.[4] On November 18, 2010, the August 18, 2009 PPAF was

---

[3] According to the Notice of Final Order, the ALJ notified the parties of their opportunity to file objections, the IDOA filed objections on July 28, 2010, and Atkinson filed a motion to strike the IDOA's objections on August 5, 2010. The Notice indicated that the SEAC granted Atkinson's motion to strike.

[4] According to an exhibit attached to the Stipulation of Facts, Atkinson received back pay from the date of her termination "until 11/13/2009 Procurement Layoffs" in the amount of $8,946.74, an

removed from Atkinson's file and a new PPAF, which was backdated to November 14, 2009, was entered which stated: "Employee laidoff. Employee layoff/termination effective November 14, 2009. Eligible for Rehire." Id. at 54. Atkinson was given the skills assessment test on January 13 and 14, 2011, as an opportunity to apply for other positions within the IDOA.

On January 27, 2011, Atkinson filed a Verified Petition for Civil Enforcement of Agency Order with the Marion County Superior Court in which she alleged that she had made demand upon the IDOA for the rescission of the termination of her employment and payment of her adjusted back pay as ordered, that the IDOA had determined unilaterally to pay Atkinson's back pay from the date of her termination of employment up to and including the date of the department layoff and to offer her an opportunity to take the same test that was given to the other procurement employees, and that IDOA's position is based on a clearly erroneous interpretation of the SEAC's final order which states that IDOA shall rescind the termination of her employment which was not subject to adjustment for the department layoff or the condition that she pass a test. Atkinson was notified on February 28, 2011, that she had not passed the skills assessment test. On August 22, 2011, the parties filed a stipulation of facts. Atkinson filed a brief in support of her petition on August 31, 2011, in which she stated in part that she lost "the state's contributions to her 401(k) and retirement accounts" and "is also entitled to interest on all money owed to her since August, 2009 plus restoration of the money that was in her Flexible Saving Account," the IDOA filed a brief in opposition to the petition on

_____

additional four days of pay for vacation days "that would have accrued and been payable" in the amount of $551.70, and "Less Unemployment paid" of $3,610.00. Appellant's Appendix at 57.

September 16, 2011, and Atkinson filed a reply on September 30, 2011. Appellee's Appendix at 22.

On November 3, 2011, the court entered Findings of Fact, Conclusions of Law, and Order on Petition for Civil Enforcement of Agency Order in which it found that, in November 2009, the IDOA completed a reorganization of the agency, that the reorganization eliminated the General Sourcing division, and that the position previously held by Atkinson no longer exists. The court also found that on November 18, 2010, the ISPD prepared a new PPAF, which was backdated to November 14, 2009, and that the August 18, 2009 PPAF was removed from Atkinson's personnel file. The court found that the SEAC's final order directed the IDOA to "rescind the termination of Atkinson's employment and adjust her pay and records accordingly," that to rescind is to abrogate or cancel unilaterally or by agreement or to repeal or annul, that reinstatement is defined as to place again in a former state or position or to restore, that the SEAC must act within its authority and does not have the power to create jobs that no longer exist, that "[a]n order to rescind a termination is not the same as an order to reinstate," and that the SEAC's final order required only the rescission of Atkinson's termination. Appellant's Appendix at 61. The court further found that "Atkinson's arguments regarding the propriety of the layoff decision, including the test administered to Atkinson, are not properly presented to this Court as they are not relevant to whether the IDOA violated the final order," that "[t]he Court believes Atkinson should have the opportunity to appeal the lay-off decisions, including the testing she was administered with the SEAC because both parties have comingled the wrongful termination issue addressed in the Final Order and the

5

layoff and testing requirements in her personnel file and in this case," that the "Final Order did not require IDOA to include contributions to Atkinson's 401(k) retirement account, the $312.00 allegedly accrued in the Flexible Spending Account, or interest on the back pay," and that the court "does not have the authority to address these monetary issues in this Petition for Civil Enforcement." Id. at 62-63. The court ordered the IDOA to remove the PPAF dated November 14, 2009 from Atkinson's file, to reinsert into her file the August 18, 2009 PPAF or to prepare an identical document if the original no longer exists, and to place a new document into her file backdated to August 17, 2010, the date of the SEAC's final order, specifically stating "Atkinson's termination on August 17, 2009 is hereby rescinded because the [SEAC] found her termination to be wrongful. She is now eligible for re-hire." Id. at 64.

On December 5, 2011, Atkinson filed a motion to correct errors and a brief in support of the motion arguing that the court failed to order the IDOA to comply with the SEAC's final order to adjust her pay accordingly, that the court erroneously concluded that the IDOA's layoff decision and testing requirements were not relevant to whether the IDOA failed to adjust her pay accordingly, and that the court erroneously concluded that she requested an impermissible additional monetary payment over and above that which was already awarded by the SEAC. The IDOA filed a brief in opposition to Atkinson's motion to correct errors which argued that the court properly determined the issues before it.

On January 19, 2012, the court entered an order denying Atkinson's motion to correct errors. The order provided in part that an order to rescind a termination is not the

6

same as an order to reinstate, that the SEAC's final order required only the rescission of the termination of Atkinson's employment, that the court's sole authority is to determine whether the IDOA violated the final order, and that Atkinson's arguments regarding the layoff decision and assessment were not relevant to whether the IDOA violated the final order. The order also provided that "the ALJ's order did not state that IDOA must adjust her matching contributions to her 401(k) plan, scheduled contributions to her PERF account, reimbursement of the balance of Flexible Spending Account and any other benefits to which she otherwise would have been entitled," that "[t]his Court does not have the authority to modify the Final Order of the SEAC issued on August 17, 2010, as this is only a Civil Enforcement Action," that "[i]f this Court included the items that [Atkinson] argues should be included in the order's language stating 'adjust her pay', this Court would be modifying the Final Order from the SEAC rather than merely requiring IDOA to comply with the Final Order. . . ." Appellant's Appendix at 12-13.

The issue is whether the court erred in denying Atkinson's motion to correct errors. We generally review rulings on motions to correct error for an abuse of discretion. Speedway SuperAmerica, LLC v. Holmes, 885 N.E.2d 1265, 1270 (Ind. 2008), reh'g denied; Ind. Bureau of Motor Vehicles v. Charles, 919 N.E.2d 114, 116 (Ind. Ct. App. 2009). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before it, or the reasonable inferences drawn therefrom. Lighty v. Lighty, 879 N.E.2d 637, 640 (Ind. Ct. App. 2008), reh'g denied.

Atkinson contends that, while the IDOA issued a check to her representing back pay and accrued vacation between August 18, 2009 and November 13, 2009, she is entitled to additional back pay between November 13, 2009 and the date IDOA ultimately complied with SEAC's final order to rescind the termination of her employment. Her position is that unlike some of her co-workers, she had no opportunity to move to another position at the IDOA or apply for a position with another state agency. Atkinson asserts that she "was not laid off [in November 2009]; rather, her employment had been terminated three months earlier, and she did not become eligible for rehire until she prevailed on her SEAC appeal more than a year later." Appellant's Brief at 8-9. Atkinson argues that the court had the obligation to order the IDOA to comply with "the SEAC's mandate by paying to Atkinson all the back pay to which she was entitled – back pay up to the date the termination of her employment was rescinded," that "[c]ontrary to the court's findings, [she] is not asking the court to award an 'additional monetary payment' beyond what was already ordered by the SEAC," and that the "SEAC had already ordered the IDOA to adjust Atkinson's pay until such time as the IDOA remedied her wrongful discharge by officially rescinding the termination her employment." Id. at 9. Atkinson further argues that her back pay should include payment of all amounts required to make her whole, including overtime pay, sick pay, holiday pay, bonuses, shift differentials, insurance benefits, pension benefits, retirement benefits, matching contributions to her 401(k) plan, scheduled contributions to her PERF account, reimbursement of forfeited money in her flexible spending account, and other fringe benefits.

The IDOA maintains that it was not required to pay Atkinson up to the date she was eligible for rehire with the State and that the ALJ could not order reinstatement because Atkinson's position had been eliminated. The IDOA also maintains that the rescission of her termination does not open up the possibility that she might have continued her employment with IDOA or the State after the date her position was eliminated, and that "[t]he record only shows that if Atkinson had not been terminated on August 17, 2009, her employment with IDOA would have continued until November 13, 2009, when the agency eliminated the General Sourcing Section and her position as procurement administrator." Appellee's Brief at 11. The IDOA further argues, with respect to Atkinson's assertion that some of her former co-workers remained employed with the IDOA even though, like her, they did not pass the test, she must bring a new and separate claim. The IDOA also maintains that it properly paid Atkinson only her salary and vacation pay, that the SEAC had the authority to only order payment of lost salary or wages under Ind. Code § 4-15-2-35, that this is a civil enforcement action and thus the trial court could not order any additional money payment beyond what the SEAC ordered, that there is no evidence that Atkinson requested the SEAC to require that her back pay include contributions to her 401(k) plan and PERF account and the use of the amount remaining in her flexible spending account, and that Atkinson did not object to the failure of the ALJ's non-final decision to order anything other than the adjustment of her pay or seek judicial review from the SEAC's final order.

In her reply brief, Atkinson argues that she does not seek damages apart from the back pay ordered by the SEAC but merely contends that the amount she received from

the IDOA did not cover the compensation she lost when her status as a state employee in good standing was taken away from her for over two years until her personnel records were adjusted accordingly. Atkinson also argues that the SEAC's order is broad enough to encompass the IDOA's required contributions to her retirement accounts, that she was unable to find any Indiana cases interpreting the scope of the term "salary or wages" as it is used in Ind. Code § 4-15-2-35, and that because the term is not defined, she believes the term should be broadly interpreted so as to provide Atkinson with all the pay and benefits she should, or could, have received had her employment not been terminated.

At the time Atkinson challenged the termination of her employment and at the time of the orders of the ALJ and the SEAC, Ind. Code § 4-15-2-35 (subsequently repealed by Pub. L. No. 229-2011, § 269 (eff. July 1, 2011)) provided in part that, except in certain cases, "the appointing authority shall follow the recommendation of the commission, which may include reinstatement and payment of salary or wages lost by the employee, which may be mitigated by any wages the employee earned from other employment during a dismissed or suspended period."

With respect to Atkinson's claim that she is entitled to additional back pay related to the period after the elimination of the General Sourcing division until the IDOA complied with the SEAC's order to rescind the termination of her employment in November 18, 2010, we note that the ALJ and the SEAC found that Atkinson proved that she was authorized to use her last vacation day and to work additional hours the week following her absences to avoid unauthorized leave and ordered the IDOA to "rescind the termination of [Atkinson's] employment and adjust her pay and records accordingly."

Appellant's Appendix at 19. The ALJ and the SEAC also ordered that Atkinson's back pay be offset by unemployment benefits or any other income she may have derived during the period of her termination.

The IDOA issued a check to Atkinson in the amount of $5,888.44 on October 14, 2010, for back pay from the period of the termination of her employment until the elimination of the General Sourcing division, which included back pay for vacation days that would have accrued but less unemployment compensation benefits Atkinson had received. We note that Atkinson does not point to the record to show that she filed a claim challenging the IDOA's elimination of her position under the circumstances. The issues of whether Atkinson may have satisfactorily completed the skills assessment test had she been afforded the opportunity to take it at the time it was administered to the other affected employees, and whether she may have obtained another position with the IDOA or another agency similar to certain other affected employees who failed the assessment skills test were not addressed by the orders of the ALJ or the SEAC. The trial court found that these issues were not properly presented to the court in this civil enforcement action as they were not relevant to whether the IDOA violated the final order and that the matters must first be presented to the SEAC. The SEAC did not order the IDOA to reinstate Atkinson's employment, to place her in another position with the agency, or to create a position for her. See Ind. Dep't of Envtl. Mgmt. v. West, 838 N.E.2d 408, 417 (Ind. 2005) (holding that the SEAC was not authorized to mandate the creation of new jobs as a remedy). We cannot say that the court erred in its November 3,

2011 findings on the issue of back pay for an additional period of time or abused its discretion in denying Atkinson's motion to correct error on this issue.

With respect to Atkinson's assertion that the court erred in failing to order the payment of certain amounts related to contributions to her State retirement plans or the use of the remaining funds in her flexible spending account, we note that Ind. Code § 4-21.5-6-3(h) provides: "Except to the extent expressly authorized by law, a petition for civil enforcement filed under this section may not request, and the court may not grant, any monetary payment apart from taxable costs." We further note that, in its order later adopted by the SEAC, the ALJ ordered that the IDOA "rescind the termination of [Atkinson's] employment and adjust her pay and records accordingly," see Appellant's Appendix at 19, but did not expressly provide that Atkinson be reimbursed or paid any amounts representing any unused portion of the funds in her flexible spending account or any contributions which the IDOA or the State would have made to her PERF or other retirement accounts on her behalf. Further, Atkinson does not point to the record to show that she argued before the ALJ that these amounts should be included in any award for back pay. Moreover, Atkinson does not point to the record to show that, after receiving notification of the ALJ's non-final order and notification that to preserve an objection to the order she must submit a written objection, she submitted or filed any such written objections as to any aspect of the ALJ's order or that she appealed the August 17, 2010 final order of the SEAC. We cannot say that the term "pay" in the SEAC's order necessarily includes all or any particular employer-provided benefits, such as contributions or access to retirement or health plan accounts, which may have been

12

provided to full-time employees of the agency. Given that this case arises from a civil enforcement petition, we cannot say that the court erred in declining to order the IDOA to reimburse or pay Atkinson for any amounts representing unused flexible spending account funds or any contributions which would have been made to her PERF or other retirement accounts or that the court abused its discretion in denying Atkinson's motion to correct errors on this issue. See Yellow Cab Co. of Bloomington, Inc. v. Williams, 583 N.E.2d 774, 779 (Ind. Ct. App. 1991) (noting that Ind. Code § 4-21.5-6-3(h) provides that the trial court cannot add fines, punitive damages, attorney fees, or any other type of damages on its own and that if an order "contains a monetary award, the trial court can enforce it" and concluding that Ind. Code § 4-21.5-6-3(h) does not permit a party to relitigate an issue which could have been decided on direct appeal), trans. denied.

For the foregoing reasons, we affirm the trial court's denial of Atkinson's motion to correct errors.

Affirmed.

BAKER, J., and KIRSCH, J., concurs.